UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMIE SEELEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02347-TWP-MG |
| | ) | |
| FALCONER, | ) | |
| J. NWANNUNU, | ) | |
| R. SCHILLING, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Falconer ("Dr. Falconer"), J. Nwannunu ("Dr. Nwannunu"), and R. Schilling's ("Mr. Shilling"), (collectively "the Defendants") Motion for Summary Judgment. (Dkt. 44). Plaintiff Jamie Seeley ("Mr. Seeley") requires a prosthetic leg to ambulate. He filed this civil action alleging that his federally secured rights were violated while he was incarcerated at New Castle Correctional Facility. Specifically, he alleges that Defendants Dr. Nwannunu, Dr. Falconer, and Health Services Administrator Mr. Schilling were aware that Mr. Seeley needed a new prosthetic sleeve but delayed acquiring one for him. Dkt. 12. Mr. Seeley alleges that he was harmed as a result and seeks punitive and compensatory damages. *Id.* For the reasons explained below Defendants are entitled to summary judgment because the record presented to the Court lacks sufficient evidence to conclude that any Defendant was deliberately indifferent to Mr. Seeley's need for a new prosthetic sleeve. As a result, the motion for summary judgment, is **GRANTED**.

## I.     STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Defendants have met that burden through their unopposed motion for summary judgment. Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for

summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.   FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Seeley, the non-moving party, and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. Here, Mr. Seeley has not responded to the summary judgment motion, so the Court treats Defendants' supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

### A.  Mr. Jamie Seeley

Jamie Seeley is a former Indiana prisoner. Mr. Seeley lost the lower half of his left leg after a motorcycle accident. Dkt. 46-7 at 3.

When Mr. Seeley was in the county jail, he had one prosthetic sleeve. *Id.* at 4. Upon his placement in Indiana Department of Corrections ("IDOC") custody, he was housed at the Reception Diagnostic Center and permitted to keep the prosthetic sleeve. He had the same prosthetic sleeve when he was transferred to New Castle in August 2020. *Id.*; dkt. 46-5 at ¶5 (citing dkt. 46-1 at 1-6).

After a few months at New Castle, Mr. Seeley's prosthetic sleeve developed a hole in it which made it difficult to walk and caused pain. Dkt. 46-7 at 3. IDOC records reflect that a replacement sleeve was ordered on September 22, 2020.  Dkt. 46-1 at 13 ("replacement L leg BKA prosthetic sleeve" ordered).

On or around November 9, 2020, Mr. Seeley submitted a formal grievance requesting that he receive a new sleeve for the prosthetic leg. Dkt. 46-6 at ¶5. The grievance records show that on

November 17, 2020, the office of the grievance specialist returned Mr. Seeley's grievance with a note, indicating that Ms. Jacobs from the medical department placed the order for his new sleeve. It was further noted that this could take up to two weeks. Dkt. 46-3 at 6-7.

On or around December 16, 2020, Mr. Seeley submitted another formal grievance asking for a new prosthetic sleeve. Dkt. 46-3 at 5. Utilization records reflect that a request was submitted to medical leadership on December 18, 2020, to provide Mr. Seeley a new prosthetic sleeve. Dkt. 46-2. The record does not indicate who made this request or why. Prior to approving the request, the Regional Medical Director asked for further information, including inquiring about the old sleeve and requesting a picture before approving the request. Dkt. 46-4 at ¶8.

On December 21, 2020, the office of the grievance specialist returned Mr. Seeley's grievance with a note, indicating that the grievance specialist had been in contact with the medical department who identified that a new sleeve was in the process of being ordered. Mr. Seeley was further informed that he would not receive the sleeve until after the first of the year. Dkt. 46-3 at 4. Mr. Seeley appealed this grievance response stating that he had been waiting for a new sleeve since September 2020. *Id.* at 3.

On January 8, 2021, the office of the grievance specialist noted that the purchase for the prosthetic sleeve had been approved and medical staff was waiting on delivery. *Id.* at 1.

On January 12, 2021, the request for a new prosthetic sleeve was approved and sent to purchasing. Dkt. 46-2.

Mr. Seeley received a new prosthetic sleeve for his leg from Ms. Jacobs "around the beginning of 2021," but it was too big and not identical to the one being replaced. Dkt. 46-7 at 3-4; dkt. 46-4 at ¶9. Ultimately, Mr. Seeley's mother was permitted to send him a prosthetic sleeve. Dkt. 46-7 at 4.

**B.  Dr. Erick Falconer, M.D.**

Dr. Falconer is a physician licensed to practice medicine in Indiana. He was employed by Wexford of Indiana, LLC ("Wexford"), as the Medical Director at New Castle through June 30, 2021. Dkt. 46-4 at ¶¶1-2. Dr. Falconer met with Mr. Seeley on a few occasions. *Id.* at ¶3. He also reviewed Mr. Seeley's relevant medical records during his incarceration within the IDOC. *Id.*; dkt. 46-1.

On October 29, 2020, Dr. Falconer met with Mr. Seeley for a chronic care appointment to discuss hepatitis C and hypertension. Dkt. 46-1 at p. 7. Dr. Falconer noted that Mr. Seeley had previously consented to starting HCV treatment for his hepatitis condition through the use of Epclusa. When reviewing Mr. Seeley's hypertension, Dr. Falconer found the condition to be stable with no further action or treatment plan changes needed. Dkt. 46-4 at ¶6. Dr. Falconer does not recall Mr. Seeley making any comments during this visit about his leg, prothesis, or need for a new prosthetic sleeve. *Id.*

Dr. Falconer next met with Mr. Seeley on February 11, 2021, for a medication review. Dkt. 46-1 at 10-11. Mr. Seeley wanted to meet with a provider to discuss his refusal of certain medications, and during that appointment, he reported he no longer needed the prescribed medication. Mr. Seeley was advised to return to nursing sick call for any worsening conditions or symptoms. *Id.* at 11; dkt. 46-4 at ¶7.

Dr. Falconer testified that he did not ignore or delay Mr. Seeley's requests for medical attention, including his request for a new prosthetic sleeve for his leg. Dkt. 46-4 at ¶8. He explains that he did not have the authority to directly obtain supplies for patients. *Id.* at ¶9. Dr. Falconer was required to first seek and obtain authorization from medical leadership for certain types of medications that were not regularly kept onsite. *Id.* As Dr. Falconer recalls, Mr. Seeley was

referred to an onsite administrative assistant, Ms. Jacobs, who was the individual responsible for ordering replacement supplies.[1] *Id.* These requests for additional supplies, such as a prosthetic sleeve, were not recorded in the electronic medical record because most could be replaced without a doctor's order in many cases. *Id.*

Dr. Falconer does not recall Mr. Seeley ever being without a proper prosthetic sleeve during his incarceration at New Castle. *Id.* at ¶11. During Dr. Falconer's evaluations of Mr. Seeley, he recalls that Mr. Seeley was able to ambulate within normal limits with the prosthetic sleeve he had on his person. *Id.* at ¶10.

Dr. Falconer testified that his recommendations for Mr. Seeley's medical treatment were based upon his medical training and judgment, his educational and professional experience, and directives from medical leadership. Dkt. 46-4 at ¶12. After July 1, 2021, Dr. Falconer no longer practiced medicine at New Castle and had no further contact with Mr. Seeley. *Id.*

**C.  Dr. John Nwannunu, M.D.**

Dr. Nwannunu is a physician licensed to practice medicine in Indiana. Dr. Nwannunu began working at New Castle in January 2019. Dkt. 46-5 at ¶¶1-2.  During Dr. Nwannunu's time as a treating physician at New Castle, he treated Mr. Seeley on a few occasions and has reviewed Mr. Seeley's relevant medical records. *Id.* at ¶3. Based on Dr. Nwannunu's review of the Mr. Seeley's medical records, Mr. Seeley arrived at the New Castle in August 2020. *Id.* at ¶5 (citing dkt. 46-1 at 1-6). However, Dr. Nwannunu did not meet with Mr. Seeley until September 17, 2021, shortly before Mr. Seeley's transfer out of New Castle. Dkt. 46-5 at ¶5 (citing dkt. 46-1 at 15-17).

---

[1] The parties do not cite to any evidence reflecting when this referral occurred, or whether Dr. Falconer made the referral.

On September 17, 2021, Dr. Nwannunu met with Mr. Seeley for a provider visit. Dkt. 46-1 at 15. Mr. Seeley requested a new prosthetic sleeve. *Id.* Based on this request, Dr. Nwannunu submitted a request to medical leadership for a prosthetic sleeve to be ordered from the Hangar Clinic for Mr. Seeley's limb prothesis. Dkt. 46-5 at ¶6. Before that appointment, Dr. Nwannunu had no knowledge that Mr. Seeley needed or had requested a new prosthetic sleeve for his prothesis. *Id.*

On September 24, 2021, Mr. Seeley was transferred to the Chain of Lakes Correctional Facility within the IDOC. Dkt. 46-1 at 12. Since that time, Dr. Nwannunu has not had any further contact with Mr. Seeley. Dkt. 46-5 at ¶7.

Dr. Nwannunu testified that he did not delay in providing Mr. Seeley with a proper sleeve for his prosthetic as he was not aware that Mr. Seeley had been requesting one until the time he met with Mr. Seeley on September 17, 2021. *Id.* at ¶8.

**D.  Ms. Rachel Schilling**

Ms. Schilling was employed as the Health Services Administrator at New Castle. Dkt. 46-6 at ¶1. As the Health Services Administrator, Ms. Schilling oversaw the provision of medical services at the facility. *Id.* at ¶2. This included, at times, reviewing inquiries submitted by staff or offenders regarding medical care, ensuring compliance with IDOC directives, providing responses to grievances that were medical in nature, and responding to offender healthcare request forms. *Id.* Occasionally, Ms. Schilling met with offenders to discuss their concerns about their medical treatment. *Id.* Ms. Schilling never met with Mr. Seeley, but she did review the responses provided to several of his grievances. Dkt. *Id.* at ¶3.

To Ms. Schilling's knowledge, she was not directly involved with the grievances Mr. Seeley filed regarding his requests for a new prosthetic sleeve in 2020. *Id.* at ¶9. Ms. Schilling

testified that she did not ignore grievances regarding Mr. Seeley's medical care, nor did she delay in ensuring that Mr. Seeley had appropriate medical care. *Id.* at ¶12.

### III.     APPLICABLE SUBSTANTIVE LAW

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Mr. Seeley filed this lawsuit against Defendants because he believes they each were deliberately indifferent to his need for a new prosthetic sleeve during his time at New Castle. The Court assumes for purposes of the summary judgment motion that Mr. Seeley's need for a properly functioning prosthetic sleeve was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that any Defendant acted with deliberate indifference—that is, that he or she consciously disregarded a serious risk to Mr. Seeley's health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Seeley "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. "Of course, medical professionals rarely admit

that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). Deliberate indifference may occur when the defendant effects "an inexplicable delay in treatment which serves no penological interest." *Petties*, 836 F.3d at 729; *see also Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) ("Persisting in treatment known to be ineffective can constitute deliberate medical indifference, provided that the doctor was subjectively aware that the treatment plan was ineffective.").

## IV.   DISCUSSION

Defendants argue they are entitled to summary judgment because the evidence reflects that THEY were not deliberately indifferent to Mr. Seeley's medical needs. Dkt. 45 at 13-14. Mr. Seeley is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he still must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* For the reasons explained below, the evidence before the Court at summary judgment reflects that no reasonable jury could conclude that any Defendant was deliberately indifferent to Mr. Seeley's need for a new prosthetic sleeve.

As to Dr. Falconer, the evidence reflects that he met with Mr. Seeley on only two occasions, and there is no evidence that Mr. Seeley mentioned his need for a new prosthetic sleeve during either encounter. Even accepting that Mr. Seeley needed a new prosthetic sleeve and that the sleeve he was later provided was too big to be effective, there is no evidence that Dr. Falconer contributed to the delays in Mr. Seeley obtaining a new prosthetic sleeve or that he was responsible for the sizing of the sleeve that was delivered. Mr. Seeley has not pointed the Court to any evidence that supports his claims against Dr. Falconer. In the absence of any evidence that Dr. Falconer

consciously disregarded a serious risk to Mr. Seeley's health, *Petties*, 836 F.3d at 728, summary judgment must be granted.

Summary judgment in favor of Dr. Nwannunu is also appropriate. Dr. Nwannunu only treated Mr. Seeley on one occasion. On September 17, 2021, Dr. Nwannunu met with Mr. Seeley for a provider visit and, based on Mr. Seeley's request for a new prosthetic sleeve, Defendant Nwannunu submitted a request to medical leadership for a prosthetic sleeve to be ordered from the Hangar Clinic. On September 24, 2021, Mr. Seeley was transferred to a different facility within the IDOC, and since then, Dr. Nwannunu has not had any further contact with him. No reasonable jury could find that Dr. Nwannunu was deliberately indifferent under these circumstances as he took appropriate action after learning of Mr. Seeley's need. *See Petties*, 836 F.3d at 728. Accordingly, Dr. Nwannunu is entitled to judgment as a matter of law.

Finally, Ms. Schilling is entitled to summary judgment because there is no evidence that she was personally involved in Mr. Seeley's medical care or treatment. Nor is there any evidence that she played a role in reviewing his grievances seeking a new prosthetic sleeve.  Dkt. 46-6 at ¶¶9, 11-12. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). In the absence of a "causal connection, or an affirmative link, between the misconduct complained of" and Ms. Schilling, summary judgment in her favor is warranted. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

## V.     CONCLUSION

In the absence of any evidence of deliberate indifference, Defendants' unopposed motion

for summary judgment is **GRANTED**. Dkt. [44]. Final Judgment consistent with this Order shall

now issue.

IT IS SO ORDERED.

Date:  9/14/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana


Distribution:

JAMIE SEELEY
28 N Pleasant View Dr
North Manchester, IN

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com